UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHALONDA P. S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-CV-382-RLM-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, Chalonda P. S., seeks judicial review of the Social Security Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. On February 19, 2020, her case was referred to the undersigned for a report and recommendation pursuant to 28 U.SC. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and N.D. Ind. L.R. 72-1(b). [DE 12]. For the reasons stated below, the undersigned **RECOMMENDS** that the decision of the Social Security Administration ("SSA") be **REMANDED** in Plaintiff's case.

**I.   OVERVIEW OF THE CASE**

Plaintiff, an obese woman, was 45 years old on March 30, 2016, her alleged disability onset date, and on April 5, 2016, when she filed her DIB and SSI applications. Plaintiff completed eleventh grade. In the past, Plaintiff worked as a warehouse worker,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

line worker, quality controller, and a cashier. [DE 8 at 30]. Plaintiff alleges disability in part due to lupus, rheumatoid arthritis, degenerative joint disease to her knees, neck and back disorders, depression, anxiety, and the pain that results.

Plaintiff's applications for DIB and SSI were denied initially on June 6, 2016 and upon reconsideration on August 26, 2016. Following a March 22, 2018 hearing, at which a vocational expert ("VE") testified, the Administrative Law Judge ("ALJ") issued a decision on July 31, 2018, affirming the Social Security Administration's ("SSA's") denial of benefits. The ALJ found that Plaintiff suffers with the severe impairments of rheumatoid arthritis, degenerative disc disease to the cervical spine, degenerative joint disease in both knees, obesity, depression, and anxiety but that her lupus and gout only constitute non-severe impairments. Further, the ALJ found that Plaintiff has the residual functional capacity to perform light work, with certain functional limitations, but cannot perform any past relevant work. Based on the VE's testimony, the ALJ concluded that Plaintiff can work as a routing clerk, an assembler, and a packer, as those jobs are defined by the Dictionary of Occupational Titles. Accordingly, the ALJ denied Plaintiff's claims for benefits.

On August 5, 2019, the Appeals Council denied Plaintiff's timely request for review of the ALJ's July 2018 decision rendering it the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Now ripe before this Court is Plaintiff's complaint for judicial review of the Commissioner's unfavorable decision under 42 U.S.C. § 405(g).

## II.   DISABILITY STANDARD

In order to qualify for disability benefits, a claimant must be "disabled" under Section 223(d) of the Social Security Act ("Act"). A person is disabled under the Act if she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is disabled, the Commissioner conducts a five-step inquiry as to whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant's impairments are severe; (3) any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) the claimant can perform her past relevant work based upon her residual functional capacity ("RFC"); and (5) the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520, 416.920[2]; *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except for Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). As such, the claimant must prove that she is disabled and submit all evidence that is relevant to the Commissioner's disability determination. 20 C.F.R. § 404.1512(a)(1).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Social Security Act authorizes judicial review of the final decision of the Commissioner. However, this Court's role in reviewing

---

[2] Regulations governing applications for DIB and SSI are found in 20 C.F.R. Part 404 and Part 416, respectively. For the sake of clarity and efficiency, this order will refer only to 20 C.F.R. Part 404 because the regulations are functionally identical.

Social Security cases is limited. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). The question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and [whether] the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In other words, the Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

The Court must review the entire administrative record to determine whether substantial evidence exists. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). However, the Court may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Id.* Yet, an ALJ's decision is entitled to less deference when her findings contain errors of fact or logic or she fails to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Furthermore, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At the very least, an ALJ must articulate her analysis of the record in a manner which allows the reviewing court to trace the path of her reasoning and to be assured that the

ALJ has considered all of the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While not required to address every piece of available evidence, the ALJ must provide a glimpse into the reasoning behind her analysis in order to build a "logical bridge" between the evidence and her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Thomas*, 745 F.3d at 806. Building a logical bridge requires the ALJ to "confront the evidence in [the plaintiff's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The ALJ cannot "cherry-pick" facts from the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Furthermore, an ALJ may not disregard a line of evidence that is contrary to her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). If the ALJ fails in her responsibility to build a logical bridge between the evidence and her conclusions, the case must be remanded. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

IV.   ANALYSIS

Here, Plaintiff challenges the ALJ's RFC determination, and her corresponding hypothetical to the VE at the hearing. More specifically, Plaintiff contends that the ALJ (1) failed to include all of the claimant's mental limitations into the hypothetical and RFC; (2) improperly dismissed the medical opinion of her treating physician, Dr. John Kelly; and (3) did not properly analyze her subjective symptoms. Plaintiff also argues that the ALJ's decision at Step Five was based on obvious conflicts with the VE testimony.

5

### A. RFC Analysis

A claimant's RFC is the most activity in which she can engage in a work setting notwithstanding the physical and mental limitations that arise from her severe impairments, non-severe impairments, and related symptoms. 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). If the claimant's impairments do not meet or equal a listed impairment at Step Three, the ALJ must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1520(e); *see also Craft*, 539 F.3d at 676. However, the claimant retains the burden of providing the ALJ with medical evidence that demonstrates how her impairments affect her functioning. 20 C.F.R. § 404.1545(a)(3).

#### 1. Mental RFC

As part of her RFC determination, the ALJ found that Plaintiff is mentally

> able to understand, remember and carryout simple and routine tasks and maintain adequate attention and concentration[,] interact appropriately on a superficial basis with her supervisors and coworkers, but is limited to occasional interaction with the general public [and must] have a work that is free from fast-paced production or quota and is able to manage changes in a work setting.

[DE 8 at 29]. In challenging the ALJ's decision, Plaintiff contends that the ALJ failed to incorporate all the mental limitations supported by the record into her RFC hypothetical to the VE at the hearing. Hypothetical questions must be supported by the medical evidence in the record. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540

(7th Cir. 1992). To the extent that an RFC falls short, the hypothetical question that the RFC is based on fails as well. *Lanigan v. Berryhill*, 865 F.3d 558, 566 (7th Cir. 2017).

In support, Plaintiff argues that the hypothetical, limiting her to simple, routine tasks and controlled interpersonal and public interactions, does not account fully for Plaintiff's moderate limitations in concentration, persistence, and pace identified by the ALJ in her Step Three analysis of Plaintiff's mental impairments. Moreover, Plaintiff argues that the ALJ failed to consider evidence favoring a finding of disability when evaluating the RFC.

"[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see also O'Connor–Spinner,* 627 F.3d at 619. "Among the limitations the VE must consider are deficiencies in concentration, persistence, and pace." *O'Connor-Spinner*, 627 F.3d at 619. The ALJ need not use the exact words "concentration, persistence, and pace" in a hypothetical to a VE, but must ensure that the VE is apprised of any such limitations either by reviewing the claimant's medical record or an adequate hypothetical based on all the evidence in the record. *Yurt*, 758 F.3d at 857–58. With that said, care must be taken when crafting a mental RFC because limiting a claimant to "simple, routine tasks and limited interactions with others" does not automatically capture temperamental deficiencies and limitations in concentration, persistence, and pace adequately. *Id.* at 858–59. Additionally, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even

7

those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (citing S.S.R. 96–8p).

Here, Plaintiff contends that the mental RFC crafted by the ALJ is insufficient because it includes no language pertaining to her concentration impairments. Notwithstanding Plaintiff's argument, the mental RFC includes more than the boilerplate "simple, routine tasks and limited interactions" language rejected by the Seventh Circuit. The ALJ not only limited Plaintiff to superficial interactions with supervisors and coworkers and only occasional public interaction but also limited Plaintiff to work "free from fast-paced production or quota . . . ." [DE 8 at 29]. The question remains, however, whether substantial evidence supports the totality of this conclusion. Thus, the language of the ALJ's analysis is critical.

Plaintiff argues that ALJ's mental RFC determination omits any reference to the State agency examiners' conclusion that Plaintiff's subjective statements about fatigue, understanding and memory limitations, and sustained concentration and persistence limitations, among others were substantiated by the objective medical evidence alone. [*Id.* at 133]. Citing a treatment note in the record from her November 2017 office visit with a mental health professional treating her depression and anxiety, Plaintiff implies that the RFC should have reflected these limitations. That record reports Plaintiff's medical history, which includes being off her medications for some time. [*Id.* at 621]. Additionally, the record notes Plaintiff's own report that she had a couple suicidal thoughts, gets angry and upset easily, and gets into verbal arguments. [*Id.*]. Plaintiff

8

also contends that the RFC does not account for off-task time appropriately but cites no evidence from the record to support this argument.

Plaintiff further points to her hearing testimony [*Id.* at 66, 68], the State agency examiner's report [*Id.* at 121], and two other treatment notes from the same mental health professional [*Id.* at 644, 647] in an attempt to show that the ALJ dismissed evidence favorable to her. *See Villano*, 556 F.3d at 563. Plaintiff testified about the limitations she faces with social functioning and activities of daily living, which the State agency found to be mild. Plaintiff also described hearing voices instructing her to kill herself or hurt others. During the three office visits with her mental health professional in June, July, and November 2017, Plaintiff consistently reported getting angry and upset easily, verbal arguments, and even physical fights with her boyfriend. In June and July, Plaintiff denied suicidal or homicidal ideations but noted some suicidal thoughts in November 2017.

Plaintiff's allegations that the ALJ failed to consider this evidence are misplaced. The ALJ clearly cited to the exhibits to the record including Plaintiff's hearing testimony, the State agency examiners' report, and the mental health professional's treatment notes. [DE 8 at 32–34 (citing Exhibits 6F, 11F, 17F, 18F, 1A, 2A, 5A, 6A). In fact, the ALJ's recitation of evidentiary facts is sufficiently thorough. In her opinion, the ALJ referenced Plaintiff's subjective symptoms, her June, July, and November 2017, visits to the mental health professional, and discussing the State agency psychological consultants' conclusions. The ALJ was thereby presented with a record of conflicting evidence as to the scope of Plaintiff's mental limitations. She compared Plaintiff's

9

testimony of concentration issues to her reports regarding her daily activities and normal mental examinations, especially related to distractibility. While the ALJ may not have explicitly discussed every detail in her testimony or the other record evidence important to Plaintiff here, the ALJ explained her decision sufficiently to build a logical bridge from the evidence in the record to her conclusion about Plaintiff's mental RFC. *See Craft*, 539 F.3d at 673.

## 2.  Weight to Opinion of Treating Physician, Dr. John Kelly

A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and is consistent with substantial evidence in the record[3]. *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)). ALJs are not, however, obligated to "blindly accept" a treating physician's opinion. *Schreiber v. Colvin*, 519 F. App'x 951, 958 (7th Cir. 2013) (*citing Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)). If an ALJ chooses to discount a treating physician's medical opinion, she must minimally articulate her reasons for doing so. *Id.*; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Additionally, an ALJ who does not afford a treating physician's opinion controlling weight must consider the following regulatory factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at

---

[3] The treating-physician rule has been modified to eliminate the "controlling weight" instruction for claims filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017), *with* 20 C.F.R. § 404.1520c (for claims filed after March 27, 2027). Here, Plaintiff claim was initiated before March 27, 2017, such that the "controlling weight" instruction still applies. *Cf. Kaminski*, 894 F.3d at 874 n.1.

issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), (c)(3)-(6).

Here, Plaintiff alleges that the ALJ improperly dismissed the opinion of her orthopedic surgeon, Dr. John Kelly, who treated her since 2012. In a physical assessment form dated July 14, 2016, Dr. Kelly opined—by marking a "Yes" response—that "[Plaintiff's] impairments/disabilities affect . . . her abilities to work, or function normally in daily life." [DE 8 at 379]. Similarly, in an August 2016 Statement of Medical Condition form prepared so that Plaintiff could be considered for a particular program by the Indiana Bureau of Motor Vehicles, Dr. Kelly similarly opined that Plaintiff is "unable to participate in training activities/employment due to [her] physical or mental limitations." [*Id.* at 433]. On both forms, Dr. Kelly also answered questions about Plaintiff's postural and exertional limitations. The ALJ gave these opinions little weight finding it "inconsistent with [Plaintiff's] mostly normal physical examinations, conservative treatment [noting that] Dr. Kelly never ordered a more aggressive treatment protocol." [*Id.* at 33]. The ALJ also stated that "only the Commissioner may make the ultimate determination as to whether an employee is capable of working." [*Id.*].

Beyond these conclusory statements, however, the ALJ's analysis of Dr. Kelly's opinion was very limited. In the paragraph focused directly on Dr. Kelly's opinion, the ALJ simply recited Dr. Kelly's reports of postural and exertional limitations from his

11

opinion documents before presenting her conclusion as quoted above. The rest of the ALJ's decision only adds minimal insight into why she discounted Dr. Kelly's opinion. Throughout her decision, the ALJ recited evidence from the record, including Plaintiff's hearing testimony, subjective symptom reports, treatment notes from Dr. Kelly and other medical and mental health professionals, test results, examination notes, and medical opinion evidence reflecting consideration of Plaintiff's entire medical record. Amidst the ALJ's recitation are references to "normal" examination results without any critical analysis to shed light on how those results, combined with the rest of the record, contradict Dr. Kelly's opinion. The ALJ also recites facts about Plaintiff's treatment but simply labels the treatment conservative without explanation let alone any analysis as to how conservative treatment is inconsistent with Dr. Kelly's opinion about Plaintiff's limitations. *See Thomas*, 826 F.3d at 961.

As such, the ALJ failed to connect specific evidence from the record to her conclusion that Dr. Kelly's opinion was not entitled to controlling weight. Without more, the Court cannot trace the path of the ALJ's reasoning and is not assured that she considered all the important evidence in the record. *See Scott*, 297 F.3d at 595.

Of course, the determination as to whether a claimant is unable to work and disabled under the Act is reserved to the Commissioner. *Thomas*, 745 F.3d at 808. Yet a medical record is not automatically disqualified as a medical opinion merely because it includes a judgment as to disability. 20 C.F.R. § 404.1527(d); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Therefore, Dr. Kelly's opinion is entitled proper evaluation and weight as a treating source opinion consistent with 20 C.F.R.

12

§ 404.1527(c), despite his statements about Plaintiff's ability to work.

Part of that evaluation necessary includes consideration of the Section 1527(c) factors if Dr. Kelly's opinion is given less than controlling weight. The ALJ's decision here does not demonstrate consideration of all the factors. The ALJ only implicitly suggests the nature and length of the treating relationship between Plaintiff and Dr. Kelly by citing to his treatment records extensively. Dr. Kelly's specialty may be discernible from those records as well. However, the ALJ's incomplete analysis leaves the Court uncertain as to the effect of the supportability and consistency factors in the weighing of Dr. Kelly's opinion. Thus, on remand, the Commissioner should ensure that any analysis of the medical opinion evidence includes a complete consideration of all the Section 1527(c) regulatory factors, as necessary.

### 3. Subjective Symptom Analysis

When evaluating a claimant's subjective complaints, an ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b)–(c). Then the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which she is limited in performing work-related activities. *Id.* An ALJ's subjective symptom analysis must reflect consideration of the totality of the evidence, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes; (5) treatment, other than medication, that the claimant

13

receives; (6) any measures used to relieve pain or other symptoms; and (7) other factors regarding the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* § 404.1529(c)(3). When determining the degree to which the claimant's symptoms affect her capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. § 404.1529(c)(4). An ALJ's findings regarding the claimant's allegations of subjective symptoms are treated deferentially and will only be overturned if "patently wrong" or "lack[ing] explanation or support." Cullinan v. Berryhill, 878 F.3d 598, 603 (7th Cir. 2017). An ALJ's determination regarding the claimant's subjective symptoms "lacks support when it relies on inferences that are not logically based on specific findings and evidence." Id.

Here, the ALJ found that Plaintiff's impairments could reasonably cause her alleged symptoms but that her statements about the intensity and persistence of these alleged symptoms were not consistent with the evidence in the record. [DE 8 at 30]. The ALJ concluded her RFC section with the conclusion that Plaintiff's "conservative treatment, normal physical examinations and her treating providers failing to order a more aggressive treatment protocol is evidence that she is not as limited as she claims . . . ." [*Id.* at 35]. While the ALJ's decision likely demonstrates consideration of the assorted regulatory factors relevant to a subjective symptom analysis, it relies on inferences that do not capture a logical connection between specific findings and evidence. *See Cullinan, 878 F.3d at 603*. Plaintiff challenges the ALJ's subjective symptom analysis arguing that is reflects improper use of conclusory boilerplate language and incomplete

14

consideration of the full range of evidence in the record. Indeed, "an ALJ cannot simply *state* the outcome of the [subjective symptom] assessment, but must explain the various factors and evidence that support the ultimate conclusion." *Adams v. Astrue*, 880 F. Supp. 2d 895, 906 (N.D. Ill. 2012) (emphasis in original); *see also Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011).

Once again, the ALJ failed to meet her obligation to explain her conclusion. As noted above, the ALJ's decision includes a thorough recitation of evidence in the record. Despite Plaintiff's concerns that the ALJ did not consider all the relevant evidence, her recitation along with her citations demonstrate that she did consider evidence both favorable and unfavorable to Plaintiff in her assessment of the subjective symptom allegations. Moreover, the ALJ's recitation incorporated all the relevant categories of evidence even though she did not explicitly mention the Section 1529 factors or organize her recitation by them. Yet without any connection between the recitation of evidence and the ALJ's subjective symptom conclusion, the ALJ has left this Court to guess as to what specific evidence supports her conclusion.

Plaintiff argues that the ALJ improperly "played doctor" by filling evidentiary gaps without any medical evidence to support her conclusion. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). Plaintiff also contends that the ALJ ignored contradictory evidence when discounting her subjective symptom allegations. *See Zurawski*, 245 F.3d at 888. The incomplete logical bridge in the ALJ's subjective symptom analysis prevents the Court from discerning if the ALJ "played doctor" or ignored contradictory evidence. As such, the ALJ's conclusion that Plaintiff is not as

15

limited as she alleges is unsupported and cannot stand. The ALJ's failure to articulate a rationale dooms her subjective symptom analysis just as it did her analysis of Dr. Kelly's treating source opinion. Thus, remand is warranted for further consideration of Plaintiff's subjective symptoms as well.

### B. VE Testimony

Lastly, Plaintiff asserts that the ALJ did not reconcile an apparent conflict between the jobs identified by the VE and the Dictionary of Occupational Titles ("DOT"). As this case is being remanded already for further consideration of Plaintiff's RFC, the Court directs the Commissioner to ensure that the Step Five analysis on remand comports with all relevant regulations and Social Security Rulings.

### V. CONCLUSION

For the reasons stated above, the ALJ failed to support her decision finding Plaintiff not disabled with substantial evidence. *See Kastner*, 697 F.3d at 646; *Scott*, 297 F.3d at 595. Accordingly, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 15th day of March 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
